Ali Salamirad (SBN 209043)
Robert J. Berens (SBN 141647)
Jeffrey D. Hook (SBN 216229)
**SMTD LAW LLP**
17901 Von Karman Avenue, Suite 500
Irvine, California 92614
(949) 537-3800
(949) 537-3822 (f)
as@smtdlaw.com; rberens@smtdlaw.com; jh@smtdlaw.com

Attorneys for Creditor,
INTERNATIONAL FIDELITY AND INSURANCE COMPANY

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No.: 2:20-bk-11376-BB |
| MONICA SHIUN OH and JIMI P. CHAE, | Chapter 7 |
| Debtor(s). | |
| INTERNATIONAL FIDELITY AND INSURANCE COMPANY, a New Jersey corporation, | Adversary Case No. |
| Plaintiff, | **COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT UNDER 11 U.S.C. §§ 523(a)(4) and 523(a)(6)** |
| v. | |
| MONICA SHIUN OH and JIMI P. CHAE, | |
| Defendants. | |

Pursuant to 11 U.S.C. § 523(a), Plaintiff INTERNATIONAL FIDELITY AND INSURANCE COMPANY, a New Jersey corporation ("IFIC" or "Plaintiff"), a creditor and party in interest in the above-referenced bankruptcy proceeding, by and through undersigned counsel, hereby complains and alleges as follows:

**I.    Parties, Jurisdiction, Venue**

1.    Debtors, Monica Shiun Oh ("OH") and Jimi P. Chae ("CHAE") (collectively, the "Debtors"), on February 7, 2020 (the "Petition Date") commenced the above-captioned bankruptcy

1.

case, *In re Monica Shiun Oh and Jimi P. Chae*, Case No. 2:20-bk-11376-BB in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Case"), by filing a Voluntary Petition for Relief under Chapter 7 of the U.S. Bankruptcy Code, as amended.

2. Plaintiff is a New Jersey corporation in good standing, duly authorized to transact business as a surety in various states, including the State of California.

3. At all times relevant hereto, Debtors acted for the benefit of, and on behalf of, themselves individually and their marital community.

4. The purpose of this Complaint is to request an exception to discharge pursuant to 11 U.S.C. §§ 523(a)(4) and 523(a)(6).

5. This adversary proceeding arises in the above-captioned Bankruptcy Case, which is now pending in the central District of California. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334.

6. Plaintiff consents to the entry of a final order or judgment by the Court.

7. Venue herein is proper pursuant to the provisions of 28 U.S.C. § 1409.

## II.    The Bonds, Indemnity Agreement and Bonded Projects

8. IFIC issued multiple performance, payment and commercial line surety bonds (collectively, the "Bonds") on behalf of Tobo Construction, Inc. ("TOBO CONSTRUCTION"), as the bond principal, in connection with multiple construction projects in the State of California. A list of the Bonds that IFIC issued on behalf of TOBO CONSTRUCTION is attached hereto as **Exhibit "A."**

9. At all relevant times, OH was the President of TOBO CONSTRUCTION, and she was in that position for approximately 12 to 13 years.

10. At all relevant times, CHAE is the husband of OH, and was also Corporate Secretary of TOBO CONSTRUCTION, and was in that position for approximately 12 to 13 years. One of CHAE's duties was management of TOBO CONSTRUCTION's staff, including project managers, superintendents, and office administrators.

11. On or about April 25, 2014, as a precondition to issuing the Bonds, and as partial consideration for the Performance of the Bonds, OH and CHAE executed an Agreement of

Indemnity (the "Indemnity Agreement") in favor of IFIC wherein they promised to indemnify and hold IFIC harmless from all damage, loss or expense IFIC incurred as a result of having issued the Bonds. The Indemnity Agreement was amended on or about November 15, 2016 pursuant to a "Rider to Agreement of Indemnity Adding Additional Indemnitor." A true and correct copy of the Indemnity Agreement, as amended, is attached hereto as **Exhibit "B"** and incorporated herein by this reference.

12.   Pursuant to the SECOND paragraph of the Indemnity Agreement, the Debtors agreed to indemnify IFIC against all loss, costs and expenses of whatsoever kind or nature, as follows:

> **SECOND:** The Contractor and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and the cost of services rendered by counsel, investigators, accountants, engineers or other consultants, whether consisting of in-house personnel or third party providers) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement. …

*See* Exhibit "B."

13.   Pursuant to the FIFTH paragraph of the Indemnity Agreement, the Debtors agreed that all monies collected by TOBO CONSTRUCTION in relation to the projects that were bonded by IFIC (the "Proceeds from Bonded Projects") were "trust funds," as follows:

> **FIFTH:** The Contractor, the Indemnitors hereby consenting, agrees that all monies due or to become due under any contract or contracts covered by the Bonds are trust funds, whether in the possession of the Contractor or otherwise, for the benefit of persons performing labor or providing materials for projects covered by the Bonds and for payment of all obligations in connection with any such contract or contracts for which the Surety would be liable under any said Bond, which trust funds also inure to the benefit of the Surety for liability or loss it may have or may sustain under any said Bond, and further agrees to use such money for the purpose of performing the contract and discharging the obligations of the Bond and for no other purpose until the Bond is completely exonerated. If the Surety discharges any such obligation, it shall be entitled to assert the claim of such person to the trust funds.

*See* Exhibit "B."

14. TOBO CONSTRUCTION entered into contracts to construct various projects and requested that IFIC furnish the Bonds for certain Projects (collectively, the "Bonded Projects"). Relying on, among other things, OH's and CHAE's promises contained in the Indemnity Agreement, IFIC issued the Bonds.

15. On or about September 19, 2016, TOBO CONSTRUCTION started construction work on the Fire Station No. 27 Replacement Project for the County of Ventura (the "Fire Station Project") with Bonds from IFIC in place.

16. On or about January 22, 2017, TOBO CONSTRUCTION started construction work on the Student Services Center Project for the El Camino Community College District in Los Angeles County (the "Student Services Project") also with Bonds from IFIC in place.

17. In or about March of 2019, the Indemnitors executed and delivered to IFIC a Promissory Note (the "Promissory Note"), under which they promissory to pay "the principal sum of Two Million, Three Hundred and Fifty Thousand and 00/100 Dollars ($2,350,000.00)" to IFIC. A true and correct copy of the Promissory Note is attached hereto as **Exhibit "C"** and is incorporated herein by this reference.

18. In or about March of 2019, the Indemnitors executed and delivered to IFIC a Financing Agreement, in favor of IFIC. A true and correct copy of the Financing Agreement is attached hereto as **Exhibit "D"** and is incorporated herein by this reference.

19. The Financing Agreement incorporates by reference and attaches as exhibits the Indemnity Agreement, the Promissory Note, and the Deed of Trust (defined below), which were all executed by the Debtors.

20. Pursuant to the express terms of the Financing Agreement, the Debtors granted IFIC a continuing security interest and lien against all of the assets that were listed in Exhibit D to the Financing Agreement and to the proceeds thereof (collectively, the "Collateral").

21. To perfect its security interest in the Collateral, IFIC filed a UCC-1 Financing Statement (the "Financing Statement") with the California Secretary of State's Office on October 21, 2019, as Document Number 82950820002, Filing Number 19-7741818783. A true and correct

copy of the Financing Statement is attached hereto as **Exhibit "E"** and incorporated herein by this reference.

22. On or around March 20, 2019, to secure her obligations under the Indemnity Agreement, Promissory Note and the Financing Agreement, defendant OH executed a Long Form Deed of Trust With Assignment of Rents (the "Deed of Trust") in favor of IFIC, which encumbered that certain real property located in the City of Manhattan Beach, County of Los Angeles, State of California located at 1257 11th Street, Manhattan Beach, CA 90266, Assessor's Parcel Number 4167-015-023, as is more specifically described in the Deed of Trust (the "Manhattan Beach Property"). A true and correct copy of the Deed of Trust is attached hereto as **Exhibit "F"** and incorporated herein by reference.

## COUNT ONE

## 11 U.S.C. § 523(a)(4)

23. IFIC incorporates paragraphs 1 through 22 above as if fully set forth herein.

24. In 2017, the Labor Commissioner, State of California, Division of Labor Standards Enforcement (the "DLSE") was investigating alleged prevailing wage violations on TOBO CONSTRUCTION's projects.

25. On or about September 18, 2017, the DLSE issued a formal Notice of Investigation to TOBO CONSTRUCTION for the Fire Station Project. The DLSE later served a Civil Wage and Penalty Assessment against TOBO CONSTRUCTION related to the Fire Station Project claiming wages due and owing to TOBO CONSTRUCTION's workers in the amount of $511,477.64, combined penalties pursuant to Labor Code §§ 1775 and 1813 in the amount of $395,675.00, penalties pursuant to Labor Code § 1777.7 in the amount of $56,680.00, and potential liquidated damages in the amount of $511,477.64.

26. On or about May 22, 2018, a check in the amount of $19,491 was issued from TOBO CONSTRUCTION's bank account to Morgan Jewelers for what is described as a Rolex in the memo line of the check. TOBO CONSTRUCTION's bank records also show other debits in 2018 that do not appear to be business related expenses in the form of Franchise Tax payments in the name of Bo Chae, among others.

27. On or about June 29, 2018, the DLSE issued a formal Notice of Investigation to TOBO CONSTRUCTION for the Student Services Project. The DLSE later served a Civil Wage and Penalty Assessment against TOBO related to the Student Services Project claiming wages due and owing to TOBO CONSTRUCTION's workers in the amount of $2,998,536.05; combined penalties pursuant to Labor Code §§ 1775 and 1813 in the amount of $2,110,500.00; penalties pursuant to Labor Code § 1776(h) in the amount of $588,000.00; penalties pursuant to Labor Code § 1777.7 in the amount of $79,400.00; and potential liquidated damages in the amount of $2,998,536.05.

28. IFIC is informed and believes, and thereon alleges, that TOBO CONSTRUCTION, OH and CHAE are alleged to have participated in a complex scheme involving kickbacks, wage theft and intentional violations of California's prevailing wages laws on the Fire Station Project and the Student Services Project, among others, that resulted in substantial underpayment of wages to TOBO CONSTRUCTION's workers.

29. On or about April 1, 2020, IFIC entered into a Release Agreement with the DLSE that resulted in a total settlement payment of $285,799.27 from IFIC to the DLSE for the unpaid wages that TOBO failed to pay its workers on the Fire Station Project.

30. On or about November 17, 2020, IFIC entered into a Release Agreement with the DLSE that resulted in a total settlement payment of $2,669,547.89 to the DLSE for the unpaid wages that TOBO CONSTRUCTION failed to pay its workers on the Student Services Project. IFIC has paid a total of $1,438,142.72 to the DLSE in partial satisfaction of this settlement, and the remaining balance is to be paid to the District from retention funds on the Student Services Project.

31. As a proximate result of the alleged scheme involving wage kickbacks, wage theft and intentional violations of California's prevailing wages laws on the Fire Station Project and the Student Services Project, and the otherwise wrongful conduct of OH and CHAE, as alleged herein, IFIC has suffered damages because OH and CHAE have diverted, absconded with and/or improperly used the Proceeds from Bonded Projects that should have been used to pay laborers and others and, in doing so, have created liability and loss to IFIC under the Bonds.

///

32. By virtue of issuing the Bonds, and pursuant to *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 137, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962), and its progeny, IFIC has equitable liens against all of the contract proceeds from the Bonded Projects (the "Proceeds from Bonded Projects"), which relate back to the time the Bonds were executed, to the extent of its losses under the Bonds.

33. IFIC's equitable lien on the Proceeds from Bonded Projects is superior to TOBO CONSTRUCTION's rights or the Debtors' right to use these proceeds. *See Pearlman*; *In re Fegert, Inc.*, 887 F.2d 955, 958 (9th Cir. 1989).

34. In addition to IFIC's equitable lien rights to the Proceeds from Bonded Projects, the Debtors also agreed in the FIFTH paragraph of the Indemnity Agreement that the Proceeds from Bonded Projects were to be held in trust funds for IFIC's benefit.

35. Beginning in May 2018, IFIC began to receive various claims against the Bonds.

36. Upon information and belief, IFIC's losses were caused by Debtors' misappropriation and embezzlement of the Proceeds from Bonded Projects for the Debtors' personal benefit.

37. Due to the Debtors' misappropriation and embezzlement of the Proceeds from the Bonded Projects, TOBO CONSTRUCTION failed to pay its laborers and materialmen and defaulted on the Bonded Projects resulting in IFIC receiving claims and making payments pursuant to its obligations under the Bonds.

38. Upon information and belief, the Debtors used the Proceeds from Bonded Projects to pay for expenses that were not expenses associated with the Bonded Projects.

39. Upon information and belief, both the Debtors, with the intent to defraud IFIC, embezzled assets of TOBO CONSTRUCTION, including, but not limited to, the Proceeds from Bonded Projects, and used these proceeds for purposes other than paying laborers and other expenses relating to the Bonded Projects, including matters benefitting the Debtors personally.

40. Both OH and CHAE owed fiduciary duties to TOBO CONSTRUCTION and were fiduciaries of TOBO CONSTRUCTION.

41. Upon information and belief, and in the alternative, while acting in a fiduciary capacity, the Debtors obtained assets of TOBO CONSTRUCTION, including the Proceeds from

Bonded Projects, and used the assets for purposes other than paying expenses related to the Bonded Projects, including matters that benefitted the Debtors personally.

42. The Proceeds from Bonded Projects should have been used to pay TOBO CONSTRUCTION's subcontractors and suppliers on the applicable Bonded Projects.

43. The Debtors directed TOBO CONSTRUCTION to not use the Proceeds from Bonded Projects for expenses related to the Bonded Projects, but instead to use the Proceeds from Bonded Projects for other matters, which constitutes a defalcation while acting in a fiduciary capacity.

44. The Debtors damaged IFIC by improperly using the Proceeds from Bonded Projects for purposes other than paying expenses related to the applicable Bonded Projects.

45. Upon information and belief, the diversion of TOBO CONSTRUCTION's assets, including the Proceeds from Bonded Projects as alleged herein, were caused by the actions of both OH and CHAE.

46. Pursuant to 11 U.S.C. § 523(a)(4), the Debtors should be denied a discharge of the debt they owe to IFIC (or such amount the Court deems appropriate).

## COUNT TWO
## 11 U.S.C. § 523(a)(6)

47. IFIC incorporates paragraphs 1 through 46 above as if fully set forth herein.

48. IFIC is informed and believes, and thereon alleges, that photographs of the Manhattan Beach Property show certain fixtures and other improvements after the Deed of Trust was executed. IFIC is further informed and believes, and thereon alleges, that OH and/or CHAE removed or caused to be removed certain fixtures and other improvements from the Manhattan Beach Project for the purpose of avoiding the repayment of their debts to IFIC.

49. The actions by the Debtors as discussed in this Complaint caused an "injury" to the property interests of IFIC.

50. The actions by the Debtors as discussed in this Complaint, which caused the injury to IFIC, were the result of "willful" conduct by the Debtors by which the Debtors intended to affect an injury to the property interests of IFIC.

51. The Debtors' willful acts were undertaken in a malicious manner.

52. Pursuant to 11 U.S.C. § 523(a)(6), the Debtors should be denied a discharge of the debt they owe to IFIC (or such amount that the Court deems appropriate).

## COUNT THREE

### INDEMINTY

53. IFIC incorporates paragraphs 1 through 52 above as if fully set forth herein.

54. In consideration of the issuance of the Bonds issued by IFIC, which named TOBO CONSTRUCTION as principal, the Debtors executed the Indemnity Agreement as part of TOBO CONSTRUCTION's application for the Bonds from IFIC.

55. Pursuant to the terms of the Indemnity Agreement, the Debtors agreed to indemnify IFIC against all loss, liability, attorneys' fees and expenses that IFIC might sustain or incur by reason of the execution of the Bonds.

56. As a result of issuing the Bonds, IFIC has incurred a net loss on the claims in the approximate amount of $2,500,000.00.

57. Despite written demand, the Debtors have failed and refused to exonerate and indemnify IFIC from and against liability, or any part thereof, for the claims against IFIC under the Bonds.

58. Pursuant to the terms of the Indemnity Agreement, the Debtors are liable to IFIC for the amount of IFIC's losses under the Bonds plus other costs and expenses, including attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, IFIC prays for Judgment against the Debtors, jointly and severally, as follows:

(a) Order that the debt of the Debtors to IFIC (or such amount that the Court deems appropriate) not be discharged pursuant to 11 U.S.C. §§ 523(a)(4) and/or 523(a)(6);

(b) Grant a nondischargable Judgment in favor of IFIC and against the Debtors for the amount of the debt owed under the Indemnity Agreement (or such amount that the

Court deems appropriate), plus pre-judgment and post-judgment interest accruing thereon, as permitted by law; and

(c) Grant IFIC such other and further relief as this Court deems proper and appropriate.

Dated: April 26, 2021

**SMTD LAW LLP**

By: /s/ Robert J. Berens
Ali Salamirad (SBN 209043)
Robert J. Berens (SBN 141647)
Jeffrey D. Hook (SBN 216229)
Attorneys for Creditor,
INTERNATIONAL FIDELITY INSURANCE COMPANY